UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | | |
|---|---|---|
| BRIAN DELAPAZ and, | ) | |
| MICHELLE DELAPAZ, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Cause No. 4:09-CV-026-JD |
| | ) | |
| MAGNIFIQUE PARFUMES and | ) | |
| COSMETICS, INC., d/b/a PERFUMANIA, and | ) | |
| VICTORIA BURTON, in her individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Plaintiffs Brian DeLapaz ("DeLapaz") and Michelle DeLapaz sued defendants Magnifique Parfumes and Cosmetics, Inc, d/b/a Perfumania ("Magnifique") and Victoria Burton ("Burton") in a three-count complaint. [DE 29]. In Count 1, DeLapaz alleges that Magnifique unlawfully terminated his employment for the purpose of preventing him from receiving ERISA benefits, in violation of 29 U.S.C. § 1140, a provision of the Employee Retirement Income Security Act (ERISA). [DE 29 ¶¶ 17-21]. In Count 2, DeLapaz sues Burton for defamation *per se* under Indiana common law. [DE 29 ¶¶ 22-25]. In Count 3, Michelle DeLapaz levies a derivative claim against both defendants for loss of consortium. [DE 29 ¶¶ 26-27]. On October 26, 2011, the defendants filed a motion for summary judgment against all claims. [DE 49; DE 50]. On January 3, 2012, the plaintiffs responded [DE 54], and on January 20, 2012, the defendants replied. Having taken the motion under advisement, the court now grants summary judgment on the plaintiff's ERISA claim, Count 1. That leaves only a state law dispute between two Indiana state residents, and so the court declines to exercise its supplemental jurisdiction over Counts 2 and 3. Each is dismissed without prejudice.

1

**BACKGROUND**[1]

Magnifique hired DeLapaz to serve as the manager of its Lafayette, Indiana, retail store in August, 2008. [DE 29 ¶ 9]. As manager of the store, DeLapaz was ultimately responsible for overseeing all activities at the store. [DE 50-1 at 5]. DeLapaz reported to Burton, who served as the acting district manager for the region that contained the Lafayette store from November, 2008, (shortly after DeLapaz was hired) until March, 2009. [DE 50-1 at 4; DE 50-2 at 5].

The chain of events that led to DeLapaz's separation from Magnifique began on December 24, 2008. DeLapaz was scheduled to manage the Lafayette store from open to close, but he did not work all of his scheduled hours. Instead, he took a two-hour break without approval to watch Santa Claus lift off in a helicopter. [DE 50-1 at 8]. The next day DeLapaz was scheduled to work was December 26, 2008, but he never made it to the store. Instead, that afternoon, DeLapaz sent an e-mail message to Burton stating that he had injured his foot and would be seeing his physician on Monday or Tuesday of the following week. [DE 50-3 at 5]. DeLapaz informed Burton that he had slipped while leaving his home for work. The slip re-aggravated a foot injury DeLapaz had originally sustained nine years earlier, and which had required extensive medical attention. [DE 50-1 at 6].

DeLapaz's e-mail to Burton began a series of misunderstandings between the two. DeLapaz asked Burton to put in sick hours for him to cover his shifts until he was able to see a doctor. [DE 50-3 at 5]. Burton responded that she could not do that; putting in sick days had to be done at DeLapaz's store on his payroll, and Burton was off-site. She told DeLapaz he needed to get his sick

---

[1] This summary of the facts is not meant to be exhaustive, to construe the facts in any particular light, or to frame the case in a certain way. It is simply meant to provide some background to the case. Particular material facts are addressed where appropriate in the "discussion" section of this order.

days in to the payroll department to cover Friday, December 26, 2008, as well as Saturday, Monday and Tuesday. [DE 50-3 at 5]. Inexplicably, and contrary to everything in Burton's e-mail, DeLapaz replied on Monday that he had sixteen sick hours remaining and asked Burton to put them in for him on Tuesday. [DE 50-3 at 7]. Some context comes from the parties' depositions; over the course of the weekend in question, Burton and DeLapaz also communicated occasionally by phone, although DeLapaz only responded to some of Burton's messages. [DE 50-1 at 10-11]. The two arranged to meet at the store on Tuesday, December 30, 2008, to discuss DeLapaz's injury and how to proceed. [DE 50-1 at 7]. At no time following the injury did anybody tell DeLapaz that he was on leave, nor did he ever request medical leave from Magnifique. [DE 50-1 at 8]. Nonetheless, despite the fact that he had no doctor's note, had not even seen a doctor, and had not requested or been given leave, DeLapaz considered himself "absolved" of all responsibilities relative to the Lafayette store the moment he told his superior he had an injury. [DE 50-1 at 10].

Despite committing to meeting with Burton at the store on Tuesday, December 30, 2008, DeLapaz went straight to the store from his doctor's appointment on Monday, December 29, 2008. [DE 50-1 at 8]. While there, he dropped off his keys to the store, and he carried out his personal belongings, which included some medications and medical equipment as well as more casual items like a microwave. [DE 50-1 at 8; DE 54-5 at 2]. He told the employee on duty at the store that he would need an operation on his foot, and he left her with a doctor's note. [DE 50-1 at 8]. With that, he left. He did not meet with Burton on Tuesday. He did not speak to Burton at any time thereafter.

On Wednesday, December 31, 2008, Burton sent an e-mail to Wendy Mahle, Magnifique's human resources director, asking how to proceed with respect to DeLapaz. She asked whether his conduct constituted a voluntary resignation. [DE 50-2 at 16, 18; DE 54-5 at 2-3]. Mahle told Burton

3

DeLapaz had resigned. [DE 54-5 at 1]. Thereafter, DeLapaz and Magnifique never had any contact beyond a telephone call by DeLapaz to the benefits department at some later date, and an email to Mahle on January 9, 2009, arguing that he had never meant to resign. [DE 50-1 at 11]. Burton no longer works at Magnifique. DeLapaz, for his part, is now permanently disabled and unable to work. [DE 50-1 at 12]. He currently receives social security benefits for himself and his children. On March 25, 2009, DeLapaz initiated this lawsuit by filing his first complaint. [DE 1]. He amended that complaint twice, leading to the current live document. [DE 29]. The defendants now move for summary judgment against all claims.

**STANDARD OF REVIEW**

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 922 (7th Cir. 2001). A material fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue exists with respect to any such material fact, and summary judgment is therefore inappropriate, when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. On the other hand, where a factual record taken as a whole could *not* lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)).

In determining whether a genuine issue of material fact exists, this court must construe all facts in the light most favorable to the non-moving party, as well as draw all reasonable and

justifiable inferences in her favor. *Anderson*, 477 U.S. at 255; *King v. Preferred Technical Grp.*, 166 F.3d 887, 890 (7th Cir. 1999). Still, the non-moving party cannot simply rest on the allegations or denials contained in its pleadings. It must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000). Furthermore, the non-moving party may rely only on admissible evidence. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009).

**DISCUSSION**

**Count 1: Unlawful Termination under ERISA**

The defendants have argued two grounds for summary judgment on Count 1, alleging unlawful termination under ERISA. First, they argue that the relief sought by the plaintiffs is unavailable under the statute, and that the claim must be dismissed as a result. Second, they argue that the claim fails because DeLapaz cannot show that the stated reason for his separation from the company was a pretext. The court disagrees with the former argument, but agrees with the latter. The defendants are entitled to summary judgment on Count 1.

**A.     Requested Relief Issue**

The first argument Magnifique raises in support of summary judgment on Count 1 pertains to justiciability, rather than to the merits. In Count 1, DeLapaz alleges that Magnifique discharged him from his employment for the purpose of preventing him from receiving ERISA benefits, in violation of 29 U.S.C. § 1140. [DE 29 ¶¶ 17-21]. Under the ERISA statutory scheme, a civil action may be brought by a person aggrieved under § 1140 "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan," or "to obtain other appropriate equitable

relief to redress such violations or to enforce any provisions of this subchapter or the terms of the plan[.]" 29 U.S.C. § 1132(a)(3). Absent from the list of available remedies is any right to legal damages, and as a result the courts have consistently noted that the statute provides only for equitable, and not legal, relief. *See, e.g., Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002).

In this case, DeLapaz laid out the relief he seeks in both specific and general terms:

> As a result of DeLapaz's termination of employment in violation of Section 510 of ERISA, Plaintiff is entitled to "appropriate equitable relief["] pursuant to [§ 1132(a)(3)]. Such "appropriate equitable relief" includes an entitlement to lost benefits, back pay, reinstatement or front pay in lieu of reinstatement and such other equitable restitution, injunctive and remedial relief available pursuant to ERISA.

[DE 29 at 3]. Magnifique argues that DeLapaz seeks only legal damages which he cannot recover, and that his claim must therefore be dismissed. Magnifique's theory is that a claim for relief not available under the statute is outside the court's jurisdiction. That theory does find some historical support in the case law. *See, e.g., Crosby v. Bowater Inc. Ret. Plan for Salaried Emps. of Great N. Paper, Inc.*, 382 F.3d 587 (6th Cir. 2004) (finding a lack of subject matter jurisdiction where § 1132(a)(3) plaintiffs sought "essentially legal relief," and collecting cases to that effect); *Oliver-Pullins v. Associated Material Handling Indus., Inc.*, 2003 WL 21696207 (S.D. Ind. May 20, 2003) (noting that "[a] federal court lacks jurisdiction over a claim under [§ 1132(a)(3)] seeking legal relief."). But it has fallen out of favor in the Seventh Circuit. In *Newpage Wisconsin System, Inc. v. United Steel*, 651 F.3d 775 (7th Cir. 2011), Judge Easterbrook concluded that the availability of remedies has no effect on the court's jurisdiction to hear the case; it simply creates an issue as to what remedies the plaintiff may obtain.

After *Newpage*, the best way of looking at the issue may be as one of justiciability. "Even

where a court possesses jurisdiction to hear a claim, it may not do so in cases where the claim presents a non-justiciable controversy (i.e., the claim is such that the court lacks 'ability to supply relief.')" *Thomas v. United States*, 217 F.3d 854 (Fed. Cir. 1999) (table) (quoting *Murphy v. United States*, 993 F.2d 871, 872 (Fed. Cir. 1993)). A case is moot if "there is no possible relief which the court could order that would benefit the party seeking it." *McKinney v. Indiana Michigan Power Co.*, 113 F.3d 770, 772 (7th Cir. 1997) (citing *In re Envirodyne Indus., Inc.*, 29 F.3d 301, 303 (7th Cir. 1994)). So, in short, the mere fact that a party has sought *some* relief which is unavailable is not necessarily fatal to his case. But if he seeks *only* legal damages which he cannot recover and "appropriate equitable relief" where the facts of the case show that no equitable relief is appropriate, with the result that he is entirely without remedy under the statute, then the case is simply moot. Fortunately for DeLapaz, this case falls into the former category.

The initial question is whether the remedies DeLapaz seeks are considered legal or equitable relief. In *Sereboff v. Mid. Atl. Med. Servs.*, 547 U.S. 356 (2006), and *Great-West*, 534 U.S. 204, the Supreme Court made clear that the court's primary consideration should be whether the category of relief requested was historically available in equity. Other cases, from the Supreme Court and elsewhere, have answered that question with respect to particular forms of damages. Compensatory damages, for example, are quintessential legal relief, and they are not available under § 1132(a)(3). *See Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993). Drawing the line between what constitutes compensatory damages and what constitutes equitable relief, however, can be difficult. The Seventh Circuit sometimes considers back pay a compensatory remedy and sometimes considers it an equitable remedy, depending on the circumstances. *Contrast, e.g., United Elec., Radio and Mach. Workers of America (UE) v. N.L.R.B.*, 580 F.3d 560, 563 (7th Cir. 2009) (characterizing back pay

7

as "compensatory" in an N.L.R.A. case) *with Doe v. Oberweis Dairy*, 456 F.3d 704, 714 (7th Cir. 2006) (holding, in a Title VII context, that back pay is equitable in nature). These differences in treatment tend to turn on the language of the statute at issue, and the Seventh Circuit has not yet answered the question with respect to § 1132(a)(3). But when deciding how to classify back pay under a given statute as a matter of first impression, the Seventh Circuit has generally been deferential to its sister courts. *See, e.g., Franzen v. Ellis Corp.*, 543 F.3d 420, 425 (7th Cir. 2008) (acknowledging Sixth Circuit and Tenth Circuit decisions holding that back pay is "legal" relief under the FMLA). In this case, such deference would lead to the conclusion that back pay is a form of compensatory damages and is unavailable. *See, e.g., Millsap v. McDonnell Douglas Corp.*, 368 F.3d 1246, 1253 (10th Cir. 2004) ("Backpay is compensatory because the award is measured by an employee's loss rather than an employer's gain."). The same goes for lost benefits. *Id.*; *see also Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 563 (1990) (where the Supreme Court characterized a claim for "lost wages and health benefits" as one for "compensatory damages"). Moreover, regardless of which technical terms are used, the Seventh Circuit has made clear that a plaintiff proceeding under § 1132(a)(3) "cannot be compensated monetarily" for his injury, which in this case is the alleged discriminatory termination. *Smith v. Med. Benefit Adm'rs Grp., Inc.*, 639 F.3d 277, 283 (7th Cir. 2011). That general rule reinforces the court's conclusion that back pay and lost benefits are unavailable under the terms of this statute.

Of course, that still leaves the plaintiff's request for "reinstatement or front pay in lieu of reinstatement," as well as his generic request for all equitable relief available under the statute. Reinstatement is clearly a form of equitable, injunctive relief. *See Lorillard v. Pons*, 434 U.S. 575, 583 n. 11 (1978) (noting that it is "clear that judgments compelling employment, reinstatement, or

8

promotion are equitable"). Front pay, too, is usually considered equitable in nature: "A front pay . . . award is the monetary equivalent of the equitable remedy of reinstatement." *See Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 854 n. 3 (2001) (quoting *Blum v. Witco Chem. Corp.*, 829 F.2d 367, 383 (3d Cir. 1987)). But, even leaving aside for the moment any potential conflict between these rules and the Seventh Circuit's ban on monetary compensation for a § 1132(a)(3) plaintiff, there is still a looming problem for DeLapaz: "[A] plaintiff may not collect damages for periods of time in which he otherwise would have been unable to work for the company[,]" *Franzen*, 543 F.3d at 426 (citing *Flowers v. Komatsu Mining Sys., Inc.*, 165 F.3d 554, 557-58 (7th Cir. 1999)), nor does he have any right to reinstatement if he is unwilling or unable to return to work. *Id.* (citing *Colburn v. Parker Hannifin/Nichols Portland Div.*, 429 F.3d 325, 332 (1st Cir. 2005)). It is undisputed that shortly after separating from Magnifique, DeLapaz became permanently disabled and unable to work. [DE 50-1 at 12]. Reinstatement and front pay in lieu of reinstatement are, by definition, things that would have to happen sometime in the future. *Pollard*, 532 U.S. at 846 ("front pay is simply money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement"). Because of his disability, the court cannot order DeLapaz reinstated, nor can it order him compensated as though he was being reinstated. Reinstatement or front pay in lieu of reinstatement is therefore unavailable.[2]

Thus, neither "lost benefits, back pay, reinstatement or front pay in lieu of reinstatement"

---

[2] Since reinstatement and front pay are forms of equitable relief, this is generally a decision for the court to make, not the jury. *See Germain v. Connecticut Nat'l Bank*, 988 F.2d 1323 (2d Cir. 1993) ("The Seventh Amendment preserves the right to trial by jury for suits at common law, not in equity.") (citing *Parsons v. Bedford*, 28 U.S. 433, 446-47 (1830)); *cf. Pals v. Schepel Buick & GMC Truck, Inc.*, 220 F.3d 495 (7th Cir. 2000) (confirming that equitable relief is determined by the judge (*e.g.*, "juries don't draft injunctions"), and holding that even the more concretely ascertainable equitable issues, like the amount of front pay, can only be determined by a jury with the consent of both parties and the judge).

is recoverable in this case, the first two because they are not permitted by the statute and the last two because they are unavailable on the undisputed facts as a matter of law. But that does not force a conclusion that the controversy is moot, or otherwise non-justiciable. *See McKinney*, 113 F.3d at 772 (7th Cir. 1997) (a case is moot if "there is no possible relief which the court could order that would benefit the party seeking it"). DeLapaz also claimed "such other equitable restitution, injunctive and remedial relief [as is] available pursuant to ERISA[.]" The court need not attempt to list every form of relief which may still be available; all it takes is one to keep the case alive. One possibility is a declaratory judgment. It is not uncommon for aggrieved parties to seek a declaratory judgment under § 1132(a)(3) stating that ERISA has been violated. *See, e.g., Newell Operating Co. v. Int'l Union of Auto., Aerospace, and Agric. Implement Workers of America, UAW*, 532 F.3d 583, 588 (7th Cir. 2008) (noting that § 1132(a)(3) allows for a suit for a declaratory judgment), *overruled on other grounds, Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983 (7th Cir. 2010); *Trs. of AFTRA Health Fund v. Biondi*, 303 F.3d 765, 770 (7th Cir. 2002); *Byrd v. Unum Life Ins. Co. of America*, 421 Fed. Appx. 397 (5th Cir. 2011) (per curiam). A declaratory judgment in his favor would certainly be "of benefit" to DeLapaz; Count 3, for example, is a derivative claim, and even if he is unable to recover monetarily on Count 1, a declaratory judgment in his favor could maintain the possibility of a monetary recovery against Magnifique on Count 3.

In short, Magnifique's argument with respect to the relief requested does not entitle it to summary judgment, or to a dismissal of Count 1. While it is true that DeLapaz cannot recover any compensatory damages or obtain an order for reinstatement or its financial equivalent, other appropriate equitable relief may be available. That is enough to keep his claim alive. The court therefore moves on to the merits.

**B.      The Merits**

DeLapaz has elected to try to make a prima facie case for unlawful termination under the indirect, burden-shifting method. [DE 54 at 8]. The plaintiff bears the burden of showing "that the reason he was terminated was to interfere with his rights under ERISA." *Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 576 (7th Cir. 1998). He must begin by making his prima facie case. He must show "'that he (1) belongs to the protected class; (2) was qualified for his job position; and (3) was discharged or denied employment under circumstances that provide some basis for believing that the prohibited intent to retaliate' or to prevent the use of benefits was present." *Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 796 (quoting *Grottkau v. Sky Climber, Inc.*, 79 F.3d 70, 73 (7th Cir. 1996)). In a § 1140 case like this one, however, the court can skip ahead in the analysis. It "need not 'determine whether a plaintiff has established a prima facie case where a defendant has advanced a legitimate, nondiscriminatory reason for its action.'" *Id.* "Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant." *Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 296 (7th Cir. 1988) (internal citations omitted). Magnifique has produced a legitimate, non-discriminatory reason for its "termination" of the plaintiff (if it can even be called that, given the evident confusion surrounding the whole affair): it thought DeLapaz quit. Accordingly, the court skips over the prima facie case to consider whether or not DeLapaz has carried his burden of showing that Magnifique's stated reason for their separation is a pretext.

When an employer meets their burden of producing a legitimate, non-discriminatory reason for its action, the burden shifts back to the employee to show that the stated reason is pretextual. *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008). Pretext is not established when the

11

plaintiff merely demonstrates the employer's reason was mistaken. *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006) (citations omitted). "An employer's mistaken belief . . . is not unlawful, so long as the belief was honestly held." *Id.* (citing *Wade v. Lerner N.Y. Inc.*, 243 F.3d 319, 323 (7th Cir. 2001)). A pretext is a deliberate falsehood; a lie, and not an oddity or error. *Id.* "[T]o meet [his] burden, [the plaintiff] 'must identify such weaknesses, implausibilities, inconsistencies, or contradictions' in [Magnifique's] stated reason 'that a reasonable person could find [it] unworthy of credence.'" *Harper v. C.R. England, Inc.*, 687 F.3d 297, 313 (7th Cir. 2012) (quoting *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007)). And, the plaintiff must do so by a preponderance of the evidence. *See Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 725 (7th Cir. 2005) ("We next turn to the question of whether [plaintiff] can show, by a preponderance of the evidence, that LLCC's proffered reason is pretext for . . . discrimination."). Moreover, the employee must show more than that the stated reason was a lie. He must show that the stated reason was a lie covering for discrimination, or, in this case, a lie covering for Magnifique's alleged true motive: terminating DeLapaz with the specific intent to deprive him of ERISA benefits. *See Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 549 (7th Cir. 2011) ("pretext for discrimination"); *Nauman v. Abbott Labs.*, 669 F.3d 854, 857 (7th Cir. 2012) (plaintiffs claiming violation of § 1140 "must demonstrate that their employers [acted] with the specific intent of preventing or retaliating for the use of benefits.").

DeLapaz has failed to carry his burden. The court notes that he has successfully created an issue of material fact as to whether he actually did quit, or intended to quit, when he stopped appearing at work, removed his belongings (microwave and medical devices), and returned his key to the store. But the question at the pretext stage is not whether he has created a genuine issue of

material fact with respect to whether he quit or not. It is whether he has created a genuine issue of material fact with respect to whether the decision-makers at Magnifique *believed* he quit or not. DeLapaz has produced only four pieces of evidence in that regard.

First, he points to "suspicious timing." Magnifique and DeLapaz parted ways shortly after DeLapaz informed Burton that he re-injured his foot and would need to see a doctor. That is circumstantial evidence, DeLapaz argues, that Magnifique concocted the resignation story as a cover-up for terminating him before his benefits might have come due. But suspicious timing, without more, is insufficient to show pretext. *Harper*, 687 F.3d at 313.

Second, DeLapaz emphasizes a chain of emails between human resources employees. In it, a junior human resources employee named Gail Vick notified Wendy Mahle, Perfumania's human resources director, that DeLapaz was applying for his STD (short-term disability), and asked if she had to give it to him. Mahle responded, "He quit. He doesn't [have] STD." Vick replied, "[C]ool happy new year to us!!" DeLapaz argues that this email chain amounts to a "celebration," but does not explain how it tends to show pretext. There are two speakers in the email chain. No reasonable person could conclude, based on her email, that Wendy Mahle was lying when she said DeLapaz quit. She may have been wrong, but there simply is no evidence here that she did not honestly hold that belief. On the other hand, it is true that Gail Vick's remark could be seen as "celebratory," when the court draws all inferences in favor of DeLapaz as the nonmovant. But not every stray remark by every employee is relevant to the pretext analysis. *See Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007). For a particular remark to provide an inference of discrimination – and therefore pretext – it must be "(1) made by the decision maker, (2) around the time of the decision, and (3) in reference to the adverse employment action." *Id*. (citing *Merillat v. Metal Spinners*, 470

13

F.3d 685, 694 (7th Cir. 2006)). The "celebratory" remark here was made by Gail Vick, and no evidence has been introduced that shows her playing any role, however minute, in the decision to separate DeLapaz from his employment. In fact, the email chain shows indisputably that DeLapaz leaving the company was news to her. Moreover, her remark pertained to a benefits decision, *not* to the decision to separate DeLapaz from the company, which had already been made. Accordingly, Vick's stray remark – and her level of delight at the news, however tactless – has no real bearing on the matter.

Third, Delapaz produced a "separation form" filled out by a Magnifique employee on January 2, 2009, shortly after he was separated from the company. [DE 54-2]. There is no signature line, but whoever completed the form was not careful about following instructions. The form instructs the individual completing it to "select one reason for separation" from any of three categories: resignation; discharge; or lay off. The individual completing the form nonetheless selected six reasons for DeLapaz's separation, including "job abandonment" and "other" from the resignation category, and "unsatisfactory performance," "insubordination," "violation of company policy" and "failure to work scheduled hours" from the discharge category. This is certainly indicative of some confusion, or laziness, on the part of a Magnifique employee, but even drawing all inferences in DeLapaz's favor it is difficult to see how it could prove that Magnifique did not actually believe he abandoned his job, let alone prove that Magnifique's statement to that effect is a cover for an illegal motive. At most, it could be seen as evidence that DeLapaz was "discharged" for job abandonment, as opposed to "quitting" through job abandonment, but neither of those paths leads to recovery for DeLapaz. His burden is to show that Magnifique's stated reason for discharge was a pretext for terminating him with the specific intent to deprive him of ERISA benefits, not that

14

he was fired for job abandonment as opposed to being separated by resignation.

Fourth, DeLapaz alleges that Burton made a statement at an unemployment compensation proceeding subsequent to his separation from Magnifique claiming that he took a substantial sum of money from Magnifique. [DE 54-4 ¶ 5]. It is undisputed that Burton's statement was inaccurate. But, like Gail Vick's "celebratory" email, it was a "stray remark" not material to the pretext analysis. *See Hemsworth*, 476 F.3d at 491. Burton was not the decision maker, and she made the remark some time (roughly thirteen weeks) after the decision was made. [DE 50-1 at 5]. Beyond a single affidavit sentence confirming that Burton made the remark, no context has been presented to the court, either. [DE 54-4 ¶ 5]. As a result, the court cannot say at all whether the remark was made in reference to DeLapaz's separation from the company or in reference to something else, such as his financial situation. It is DeLapaz's burden to make those connections – to show how these stray remarks can support a finding of pretext. That burden is not discharged simply by showing that at some point, some time after the decision was made, an actor who was not the decision maker said something false.

In short, DeLapaz has failed to carry his burden of showing pretext by a preponderance of the evidence. His evidence that Magnifique's explanation of the separation – that he quit – is a lie amounts to suspicious timing, a separation report that shows confusion but in no way supports a finding that a lie was told, and a pair of immaterial remarks by employees who did not make the decision to terminate him. Burton's remark, in particular, pertained only to missing money. But the reason Magnifique has put forth for its separation from DeLapaz is that he quit, not that he took money from the company. Burton's allegation that DeLapaz took money from the company, made thirteen weeks after his separation from the company in an unrelated proceeding, simply is not

15

evidence that the company is lying when it says it believed DeLapaz quit. The issues are totally distinct. The scant evidence DeLapaz has brought forward – none of which actually suggests pretext, let alone pretext for an illegal motive – is not enough. Summary judgment must be **GRANTED** on Count 1.

### Counts 2 and 3: Defamation and Loss of Consortium

This case came to the court under its federal question jurisdiction, and the parties are not completely diverse. [DE 29 ¶ 8]. At this point, Count 1, the only claim over which this court had original jurisdiction, has been resolved. Count 1 was also the only independent claim against Magnifique; Count 2 alleges defamation against Burton, and Count 3 is a derivative claim against both defendants. Without Count 1 as a hook against Magnifique, the Count 3 derivative claim against Magnifique cannot stand. Accordingly, the case has been reduced to Count 2, alleging defamation against Burton, and Count 3, a derivative loss of consortium claim against Burton. To summarize, that means this case now consists of an Indiana plaintiff suing an Indiana defendant for defamation and loss of consortium, both quintessential state law claims. According to § 1367(c), a district court may decline to exercise supplemental jurisdiction over a state law claim if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). "When all federal claims have been dismissed prior to trial, the principle of comity encourages federal courts to relinquish supplemental jurisdiction pursuant to § 1367(c)(3)."

*Hansen v. Bd. of Tr. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008) (internal citations omitted). The outcome of the defamation and loss of consortium counts is not so clear that the court can dispose of them as a matter of course, and for this court to continue to preside over what is now solely a state law action would offend the principle of comity. The court has disposed of the claim over which it had federal jurisdiction, and the case now presents only issues of state law, which therefore clearly predominate over the now non-existent federal issues. Under these circumstances, the court **DECLINES** to exercise its supplemental jurisdiction. Count 2 and Count 3 are **DISMISSED WITHOUT PREJUDICE**, and DeLapaz is free to pursue them in state court without any preclusive effect resulting from this decision.[3]

## CONCLUSION

In conclusion, summary judgment is **GRANTED** with respect to Count 1. Counts 2 and 3 are **DISMISSED WITHOUT PREJUDICE**. The clerk is instructed to close the case.

SO ORDERED.

ENTERED:  September 26, 2012

      /s/ JON E. DEGUILIO
Judge
United States District Court

---

[3] The court also notes that this decision will not prejudice the plaintiffs with respect to any state statutes of limitation for their claims. Pursuant to 28 U.S.C. § 1367(d), the "period of limitations" with respect to any claim brought under a federal court's supplemental jurisdiction "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." State courts are obligated to follow the statute, and in any case, Indiana has a corresponding savings statute that is even more generous. *See, e.g., McGill v. Ling*, 801 N.E.2d 678 (Ind. App. 2004) (explaining how the Indiana "Journey's Account Statute," I.C. § 34-11-8-1, renders claims like these timely when re-filed in state court); *see also* AMJUR LIMITATION § 276 (for more general information).